No. 88-276

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

JOHN MILLER, JR., and WILLIAM
E. TAYLOR,

          Plaintiffs and Appellants,

   -vs-

YELLOWSTONE COUNTY, YELLOWSTONE COUNTY
COMMISSIONERS, GRACE M. EDWARDS, DWIGHT
MacKAY, CONRAD BURNS, and YELLOWSTONE
COUNTY TREASURER, MAY JENKINS,

          Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Thirteenth Judicial District,
             In and for the County of Yellowstone,
             The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Parker Law Firm; Paul E Toennis, Billings, Montana

    For Respondent:

        Harold Hanser, County Attorey, Billings, Montana
        David W. Hoefer, Deputy County Attorney, Billings

_____

Submitted on Briefs:  Aug. 18, 1988

Decided:  September 27, 1988

Filed:    SEP 2 7 1988

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Rural Special Improvement District No. 41 was created in 1938 by the County Commissioners of Yellowstone County for the installation of a water main having a diameter of four inches for the benefit of the owners within the District. In 1986 the County Commissioners replaced the four-inch water main in the District with one having a diameter of twelve inches and assessed the cost thereof to the owners within the District as a maintenance cost. We hold in this appeal by John Miller, Jr., from a summary judgment against him in the District Court, Thirteenth Judicial District, Yellowstone County, that the replacement of the water main was reconstruction, not maintenance, and reverse the District Court.

The County was apparently forced to enlarge the water main because of the erection of a new county jail within the boundaries of the District. The issue on appeal is whether the replacement of a four-inch water main with a main of nine times greater capacity is mere maintenance. The question seems to answer itself.

Under § 7-12-2102, MCA, county commissioners are given broad power to order and create special improvement districts outside the limits of incorporated towns and cities for the purpose of building, constructing and acquiring all of the improvements allowed to city special improvement districts as described in § 7-12-4102, MCA. Through the latter statute, the county commissioners thus have the power, whenever the public interest or convenience may require, to create special improvement districts "and order the acquisition, construction, or <u>reconstruction</u>" of water mains and extensions of

2

water mains. Section 7-12-4102(2)(d)(iii), MCA. (Emphasis added.)

Once a rural special improvement district has been created, and the improvements installed, the county commissioners have two options by which to defray the cost of maintenance. Under § 7-12-2120, it is made the duty of the county commissioners "to adequately and suitably maintain and preserve" the improvements and "to fully keep the same in proper repair and operation" by contract or otherwise as the board may determine. The whole cost of such maintaining, preserving or repairing the improvements under § 7-12-2120 is assessed to the entire district and paid by the property owners with their taxes.

The other option for the county commissioners to pay maintenance costs is to create an improvement district maintenance fund under § 7-12-2162, MCA. Under this provision it is the duty of the county commissioners, before the first Monday in September of each year, to adopt a resolution assessing the whole cost of maintaining, preserving or repairing the improvements for that year against the property within the district.

In this case, the County Commissioners apparently decided to proceed under § 7-12-2120, MCA, to replace the water line, and to charge the district property owners the cost of replacement as maintenance, preservation and repair of the water line, spread over five years. But whichever option was used, the applicable principles remain the same.

No notice of the proposed replacement of the water line or opportunity to protest the replacement was given to the property owners within the District.

It is obvious that the meanings of the words "maintenance," "preservation" or "repair" cannot be stretched to include the complete replacement of the water main, and its

3

enlargement to nine times its capacity. A reconstruction occurred, for which the County Commissioners had the power to create a special improvement district under the statutes aforesaid. If the County Commissioners had proceeded to create a rural special improvement district for such reconstruction, the property owners would have been given notice of the intention to create the district (§ 7-12-2105, MCA) and of their right to protest its creation or extension (§ 7-12-2109, MCA).

We hold that the replacement of the water line in this case was not maintenance, but rather, reconstruction. We therefore reverse the summary judgment as to the appellant John Miller, Jr. The other plaintiff, William E. Taylor, has not appealed, and the judgment of the District Court stands as to him.

There were other issues raised both by Miller and the County in the District Court which were not reached because of the summary judgment. Those issues are not before us on this appeal. We therefore reverse and remand for further proceedings before the District Court in conformance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
Justices

Mr. Justice Sheehy did not participate in this cause.

4